IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD D. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12CV1326 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Richard D. Morgan, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on April 13, 2007, alleging a disability onset date of August 7, 2005. (Tr. 106-08.)[1] The application was denied initially and again upon reconsideration. (Id. at 60-61, 64-68, 71-74.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 75-76.) Present at the May 11, 2010 hearing were Plaintiff and his attorney. (Id. at 39.) The ALJ determined that Plaintiff

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

was not disabled under the Act. (*Id.* at 22-34.) Plaintiff requested that the Appeals Council review the ALJ's decision. (*Id.* at 16.) On August 6, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 3-6.)

## II. FACTUAL BACKGROUND

Plaintiff was 41 years old on the alleged disability onset date. (*Id.* at 28.) He has a limited education and is able to communicate in English. (*Id.*)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not

undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity ("RFC")[4] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ completed all five steps of the sequence, and determined that no other jobs existed in significant numbers in the national economy which Plaintiff could perform. (Tr. 28.) The ALJ explained that "the additional limitations from all of the impairments, including the substance use disorders, so narrow the range of work the claimant can perform that a finding of 'disabled' is appropriate." (*Id.*)

To reach his conclusion, the ALJ determined, in steps one and two, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 7, 2005 and had the severe impairments of chronic obstructive pulmonary disease, asthma, a ventral hernia, residual effects of a traumatic injury to his knee in July 2009, seizures secondary to alcoholism, depressive disorder, and alcohol abuse. (*Id.* at 24-25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC "based on all of the impairments, including the substance abuse disorders. . . ." (*Id.* at 26.) Based on this

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

evidence and the remainder of the entire record, the ALJ determined that "the claimant has the residual functional capacity to perform far less than the full range of sedentary work" as defined in 20 C.F.R. § 404.1567(a). (*Id.*) The ALJ explained:

> [The claimaint] is unable to, on a sustained basis, work eight hours per day and five days per week secondary to his frequent hospital visits for alcohol withdrawal symptoms. Further, he should avoid concentrated exposure to respiratory irritants and hazards; should never climb ropes, ladders, and scaffolds; and is limited to performing simple, routine repetitive tasks.

(*Id.*)

### C. Past Relevant Work

The ALJ found in step four that "[g]iven the claimant's residual functional capacity for less-than-sedentary work, he is unable to perform any of his past relevant work" as a cook or building maintenance repairer. (*Id.* at 28.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C.§ 423(d)(5); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education and past work experience. *Hunter v. Sullivan*, 993 F. 2d 31, 35 (4th Cir. 1992); *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ made the following finding:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work

6

experience, a finding of not disabled would be directed by Medical-Vocational Rule 201.25. However, the additional limitations from all of the impairments, including the substance use disorders, so narrow the range of work the claimant can perform that a finding of "disabled" is appropriate under the framework of this rule.

(Tr. 28.)

### E. Disability Where There is Evidence of Alcoholism

Where the ALJ finds that the claimant is disabled, and there is medical evidence of alcoholism, the ALJ must then determine whether the alcoholism was a material contributing factor to the disability determination. 20 C.F.R. § 404.1535(a); *see also* 42 U.S.C. § 423(d)(2)(C) (providing that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"). The "key factor" in determining whether alcoholism is a material contributing factor is whether the claimant would still be found disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1).

"In making this determination, [the ALJ evaluates] which of [the claimant's] current physical and mental limitations, upon which the ALJ based his current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." *Id.* § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations would not be disabling if he stopped using alcohol, then the ALJ will find that alcoholism is a contributing factor material to the determination of disability. *Id.* § 404.1535(b)(2)(i). If that determination is made, the claimant is not considered disabled under the Act. 42 U.S.C. §

423(d)(2)(C). The claimant bears the burden to prove that he would be disabled if he stopped using alcohol. *See McCray v. Colvin*, C/A No. 1:13-173-SVH, 2014 WL 3798835, at *14 (D.S.C. July 31, 2014) (citing *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2011)).

Because the disability finding here included Plaintiff's alcohol use, the ALJ considered whether Plaintiff's remaining limitations would have caused more than minimal impact on his ability to perform basic work activities during the period at issue if Plaintiff stopped using alcohol. The ALJ first determined which limitations would remain independent of Plaintiff's alcoholism: "the claimant's chronic obstructive pulmonary disease, asthma, ventral hernia, and the residual effects of his knee injury would continue." (Tr. 29.) However, "[the claimant] would cease having withdrawal symptoms, including seizures, if he were to permanently stop abusing alcohol. Further, his depressive disorder would no longer be a severe impairment." (*Id.*)

Next, the ALJ applied the five-step sequential evaluation process to determine whether the remaining mental and physical impairments would be disabling. (*Id.* at 29-33.) Under steps two and three of the process, Plaintiff's physical impairments remained "severe" independent of his alcoholism. (*Id.* at 29.) However, the ALJ "rate[d] the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[]" as "nonsevere" if Plaintiff stopped abusing alcohol.[5] (*Id.* at 29-30.) In steps three and four the ALJ assessed

---

[5] "In determining the extent to which any mental limitations would remain if the substance use was stopped, the [ALJ] has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments." (Tr. 29 (citing

8

both physical and mental limitations caused by the impairments that would remain independent of alcohol. (*Id.* at 30-32.)

As to opinion evidence, the ALJ considered the State agency mental assessments, which included reports of two psychological consultants who reviewed the record and "opined that the claimant's substance abuse disorders were nonsevere impairments." (*Id.*) The ALJ specifically found that these assessments were "generally consistent with the evidence of record." (*Id.*)

The ALJ concluded that without Plaintiff's alcohol dependence, "the claimant would have the residual functional capacity to perform sedentary work . . . except he would have to continue to avoid concentrated exposure to hazards and respiratory irritants in the workplace and would remain unable to climb ropes, ladders, or scaffolds." (*Id.* at 30.) Based on this residual functional capacity, the ALJ found that "the claimant would not be disabled if he stopped the substance use." (*Id.* (citations omitted).) Accordingly, the ALJ determined that Plaintiff's substance use disorder was a contributing factor material to the determination of disability and that Plaintiff was not disabled within the meaning of the Act at any time between August 7, 2005 (alleged date of onset) and May 21, 2010 (date of the ALJ decision) (*Id.*)

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that substantial evidence does not support the ALJ's finding that the claimant was not disabled based on the finding that alcohol was a contributing factor to his impairments; and (2) that the ALJ erred in not

---

20 C.F.R. § 404, app.1).)

obtaining testimony from a vocational expert concerning the degree of erosion of the sedentary job base in light of the finding that the claimant can sit "frequently". (Pl.'s Br. at 2, Docket Entry 12.)

### A. The ALJ's Materiality Finding is Supported by Substantial Evidence

Plaintiff's argument as to the ALJ's materiality finding is difficult to understand. In its entirety, the argument reads:

> It is undisputed that [Plaintiff] has had alcohol dependence. This does not automatically disqualify him for Social Security benefits, however. To be disqualified, it must be shown that alcohol abuse is a contributing factor in his disability.
>
> [Plaintiff] testified that he began drinking about 3 months before he and his wife separated. As stated, he drank heavily and often. After a lot of apparent misery, however, [Plaintiff] stopped drinking. His last drink was on November 28, 2009; this was at about the time he began a 90-day detoxification program at Bridge Way Health in High Point, North Carolina. Morgan was released from Bridge Way on March 1, 2010. He has been steadily attending Alcoholics Anonymous 3 to 4 times per week since then. As of the time of the hearing on May 11, 2010, it had been about 6 months since Morgan's last drink.
>
> Without discussing the foregoing evidence, the ALJ found that [Plaintiff] was unable to sustain a full-time job because of frequent hospitalizations for alcohol withdrawal symptoms.
>
> The ALJ's finding is not supported by substantial evidence. There is no evidence that [Plaintiff] had a drink after November 28, 2009. He remembers that day because it was then, or soon after, that he began a 90-day detoxification program. People generally do not put themselves through such treatment unless they are committed to ending his substance abuse. Nor did people attend AA meetings 3 to 4 times a week unless they are committed to ending their abuse of alcohol. The ALJ's finding that [Plaintiff] would continue to have withdrawal symptoms is pure surmise. If [Plaintiff's] claim is to be denied, then [Plaintiff] respectfully urges that it be on some defensible ground, some ground other than that stated by the ALJ.

(Pl.'s Br. at 4-5, Docket Entry 12) (internal citations to administrative record omitted).

Plaintiff's argument is vague, conclusory, and without merit. Plaintiff argues that because he is now sober, his alcohol abuse may not be the basis of a denial of benefits. However, if this Court were to find that the ALJ had no basis for finding that Plaintiff's alcohol withdrawal symptoms, including seizures, would prevent him from working full-time, the ALJ's decision would still stand because he properly found what Plaintiff's RFC would be if he stopped drinking. (Tr. 30.) Plaintiff makes no argument that the ALJ erred by finding him capable of performing a sedentary work with limitations. In other words, the ALJ did not deny Plaintiff's claim because of his alcoholism. Rather, the ALJ found that Plaintiff would not be disabled if he were not drinking. (*Id.* at 30-33.) If Plaintiff is sober, therefore, the second, unchallenged RFC finding applies to him and he is not disabled.

If Plaintiff's argument is that the ALJ's materiality finding is not supported by substantial evidence, this argument is without merit. The ALJ found that Plaintiff's frequent treatment for alcohol withdrawal symptoms would prevent him from engaging in full-time work. (*Id.* at 26.) The record is replete with references to Plaintiff's many hospitalizations for withdrawal symptoms and his frequent reports of seizures which were caused by alcohol withdrawal. (*Id.* at 233, 249, 274, 294-95, 297-300, 326-32, 428, 433, 438-39, 461, 472-73, 481, 601-02, 607-12, 615-16, 626-28, 632, 642.) The ALJ found that Plaintiff could not perform his past relevant work and that there were no jobs that existed in significant numbers in the national economy that he could perform. (*Id.* at 28.) While the ALJ found that if Plaintiff stopped his alcohol use he would continue to have severe impairments,[6] the

---

[6] The ALJ found that Plaintiff would still have the following severe impairments: chronic obstructive pulmonary disease, asthma, ventral hernia and the residual effects of his knee injury. (Tr. 29.)

11

ALJ further found that without the alcohol use Plaintiff would have the residual functional capacity to perform sedentary work with certain limitations and that he could continue to perform a significant number of jobs in the national economy.

After a careful review of the record in this case, the Court concludes that the ALJ's decision is supported by substantial evidence. The record in this matter clearly establishes that Plaintiff suffered from severe and longstanding alcoholism. In finding that Plaintiff's substance abuse was material to his disability, the ALJ noted that the opinions of the two non-examining State agency psychological consultants of record substantiated this finding. (*See id.* at 279-292, 358-371.) Both consultants found Plaintiff's alcohol abuse material to his disability. (*Id.* at 291; 370.) Moreover, as described above, the evidence demonstrates that Plaintiff's alcohol abuse resulted in several hospitalizations and required frequent treatment for withdrawal symptoms. Notably, there is no evidence from treating physicians during Plaintiff's period of sobriety.[7] Substantial evidence supports the ALJ's findings. Plaintiff is therefore not entitled to relief on this issue.

## B. The ALJ Properly Relied Upon the Grids in Determining that There Would be a Significant Number of Jobs in the National Economy that Plaintiff Could Perform

Plaintiff also contends that the ALJ improperly used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to direct a conclusion of not disabled. This argument lacks merit. At step five of the sequential analysis, the government must prove in one of two ways that a claimant is able to perform other jobs in

---

[7] During the relevant time period, the medical records in the record consistently relate to a period of time when Plaintiff was drinking or struggling with alcohol abuse. There are no records from his reported 6-month period of sobriety.

the community. Where a plaintiff suffers from purely exertional limitations,[8] the ALJ may apply the grids, to establish the claimant's vocational ability. *See McClain v. Schweiker*, 715 F.2d 866, 870 n.1 (4th Cir. 1983). In other words, if a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, the Fourth Circuit has held that the grids are sufficient to determine a plaintiff's ability to perform basic work activities. *See Hammond v. Heckler*, 765 F.2d 424, 425-26 (4th Cir. 1985). However, if the claimant suffers from significant nonexertional limitations,[9] the grids are not determinative and the ALJ must consider testimony from a vocational expert ("VE"). *McClain*, 715 F.2d at 870 n.1.

The Fourth Circuit has emphasized that the "grid tables are not conclusive but may only serve as guidelines." *Walker v. Bowen*, 889 F.2d 47, 48 (4th Cir. 1989) (citing *Wilson v. Heckler*, 743 F.2d 218 (4th Cir. 1984)). The proper inquiry is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable. *Id.* If so, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) (citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). The ALJ may rely exclusively on the grids, however, where the ALJ has properly decided, as an issue of fact, that Plaintiff's non-exertional condition does not affect his capacity for work. *Stratton v. U.S. Dept. of Health & Human Servs.*, No. 88-1614,

---

[8] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling)." 20 C.F.R. § 404.1569a(b).
[9] Nonexertional limitations affect a claimant's ability to meet the other demands of a job and include mental limitations, pain limitations and physical limitations not included in the seven strength demands. 20 C.F.R. § 404.1569a(c).

1989 WL 100814, at *3 (4th Cir. July 24, 1989) (unpublished opinion); *see also Smith*, 719 F.2d at 725 ("Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact."); *Phillips v. Astrue*, No. 1:10CV289, 2011 WL 5039779, *3 (M.D.N.C. Oct. 24, 2011) (unpublished) (citation omitted) (concluding that "the ALJ may rely exclusively on the Grids where the ALJ has properly decided, as an issue of fact, that Plaintiff's non-exertional condition does not significantly affect" his ability to work).

Plaintiff's RFC, as found by the ALJ, clearly contains both exertional and nonexertional limitations beyond those of purely "sedentary" work:

> In sum, the above residual functional capacity assessment is supported by the fact that the claimant has a ventral hernia which limits him to lifting a maximum of ten pounds. In addition, the claimant's knee injury, though not as limiting as the claimant has alleged, could reasonably limit him to only occasionally standing and walking during an eight-hour day and to never climbing ropes, ladders, and scaffolds. Furthermore, the claimant can sit frequently. Therefore, a limitation to sedentary work not requiring him to climb ropes, ladders, or scaffolds is justified by the evidence of record. Finally, the claimant's balance problems and respiratory problems render concentrated exposure to workplace hazards and respiratory irritants inadvisable.

(Tr. 32-33.) Sedentary work involves "lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . . Jobs are sedentary if walking and standing are required occasionally." *Id.*

Plaintiff argues that the use of the descriptor "frequently" restricts Plaintiff to sitting fewer than six hours in an eight-hour workday. (Pl.'s Br. at 2-3, Docket Entry 12.) Plaintiff contends that the term "frequently" limits the range of available sedentary work and

therefore the testimony of a VE was required to determine the degree to which Plaintiff's sedentary job base may be eroded. (*Id.* at 3.) Defendant argues that the ALJ used the term "frequently" as it is commonly understood, not as a limitation under the SSA Rulings (Def.'s Br. at 7, Docket Entry 15.)

The ALJ did not identify any specific problems related to Plaintiff sitting. The ALJ concluded that "the additional limitations that would remain [after stopping substance abuse] have little or no effect on the occupational base of unskilled sedentary work." (*Id.* at 33.) For example, the ALJ explained that "[f]ew jobs at the sedentary level require the climbing of ropes, ladders, or scaffolds and/or concentrated exposure to respiratory irritants and workplace hazards." (*Id.*) Therefore the ALJ found that "the sedentary occupational basis is not significantly eroded by these additional limitations." (*Id.*) (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

The context of the ALJ's RFC assessment makes it clear that finding "the claimant can sit frequently" was not a limitation. The ALJ listed Plaintiff's limitations and circumscribed the occupational base of sedentary work according to those limitations; sitting was not listed as a limitation. Furthermore, the ALJ specifically found that Plaintiff's ability to perform sedentary work was not reduced by his nonexertional impairments. Substantial evidence supports the ALJ's finding. Therefore the ALJ correctly applied the grids as a framework to find that there are a significant number of jobs in the national economy that Plaintiff could perform. *See Rogers v. Barnhart*, 204 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (deeming appropriate the ALJ's use of the grids as a framework for his decision because the

claimant's ability to perform sedentary work was not reduced by her nonexertional limitations).

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on the proper legal standards. **IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability by **AFFIRMED**, the Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and that this action be **DISMISSED** with prejudice.

Joe L. Webster
United States Magistrate Judge

February 12, 2015
Durham, North Carolina